# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TOSHEI A. WOODS**                                         **CIVIL ACTION**

**VERSUS**                                                 **NO. 24-159-BAJ-SDJ**

**LOUISIANA SPECIAL SCHOOL DISTRICT**

---

## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report and Recommendation. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

Signed in Baton Rouge, Louisiana, on November 26, 2025.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TOSHEI A. WOODS**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 24-159-BAJ-SDJ**

**LOUISIANA SPECIAL SCHOOL DISTRICT**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment (R. Doc. 50) filed by Defendant, the Louisiana Special School District, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also before the Court is a Motion to Consider Plaintiff's Motion for Summary Judgment and/or Opposition Timely Filed (R. Doc. 54) filed by Plaintiff Toshei Woods. Defendant filed an Opposition to Plaintiff's Motion (R. Doc. 56) and Plaintiff filed a Reply in Support of her Motion (R. Doc. 57). The Court considers both Motions (R. Doc. 50 and R. Doc. 54) fully briefed. The Court reviewed Plaintiff's Motion (R. Doc. 54) as an Opposition to Defendant's Motion for Summary Judgment. For the reasons given below, the Court **recommends** that Defendants' Motion for Summary Judgement (R. Doc. 50) be **granted,** and that Plaintiff's claims be **dismissed**.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed her Complaint for Employment Discrimination against SSD on August 3, 2023, in the United States District Court for the Eastern District of Louisiana, alleging that she was subjected to discrimination on the basis of her race, color, sex, and age, as well as retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. On October 11, 2023, SSD

filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6), seeking dismissal of all of Plaintiff's claims. (R. Doc. 9). On December 4, 2023, Honorable Judge Africk of the Eastern District of Louisiana entered an Order & Reasons dismissing Plaintiff's ADEA claims as being barred by the doctrine of sovereign immunity. (R. Doc. 13 at 6). Plaintiff's Title VII claims were allowed to proceed. Plaintiff's remaining Title VII claims include hostile work environment, disparate pay, discriminatory termination, and retaliation. (R. Doc. 13). On February 26, 2024, the case was transferred to this Court (R. Doc. 25).

On August 1, 2025, and pursuant to the Court's Amended Scheduling Order (R. Doc. 49), Defendant timely filed a motion for summary judgment seeking dismissal of the claims brought by Plaintiff (R. Doc. 50). The dispositive motion deadline as established in the Court's Amended Scheduling Order was August 1, 2025. (R. Doc. 49). Under Local Rule 7(f), Plaintiff's opposition to Defendant's motion for summary judgment was due to be filed no later than August 22, 2025. However, despite these August 1 and 22 deadlines, Plaintiff did not file a motion for summary judgment or an opposition to Defendant's motion for summary judgment until September 3, 2025. (R. Doc. 54).

On August 7, 2025, Plaintiff transmitted via email an electronic copy of a document entitled, "Motion for Summary Judgment," to a staff paralegal for counsel for SSD.[1] One week later, on August 14, 2025, counsel for SSD emailed Plaintiff to inform her that the Electronic Filing System did not show that her Motion for Summary Judgment had been filed with the Clerk of Court and reminded her that she must file the motion into the record with the Clerk of Court in order for it to be considered by the Court.[2] Having considered the arguments in Plaintiff's Motion

---

[1] *See* R. Doc. 54-1.

[2] *See* R. Doc. 54-2 at 1.

to Consider Plaintiff's Motion for Summary Judgment and/or Opposition Timely Filed (R. Doc. 54), in conjunction with Plaintiff's *pro se* status, the Court reviewed Plaintiff's Motion (R. Doc. 54) as an opposition to Defendant's Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

Because Plaintiff failed to properly controvert Defendant's Statement of Material Facts, which were each supported by record citations, Defendant's Statement of Material Facts shall be deemed admitted.[3] This litigation involves employees within the SSD. By way of background, the facts regarding the SSD, as well as Plaintiff's employment, are admitted as follows.[4]

SSD was legislatively created effective July 1, 2021.[5] The Louisiana SSD is mandated by the Louisiana Legislature to provide educational services to children who are sensory impaired and to children with exceptionalities who reside in the State of Louisiana. Prior to July 1, 2021, the Louisiana Department of Education operated and maintained SSD.[6] SSD operates the Louisiana School for the Deaf, the Louisiana School for the Visually Impaired, and the Louisiana

---

[3] *See* L.R. 56(c) and L.R. 56(f).

Local Rule 56(c) reads:
 A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.

Local Rule 56(f) reads:
Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

[4] Some facts submitted are not repeated here on the ground that they are not material to this ruling.
[5] La. R.S. 17:1945.
[6] La. R.S. 17:1945; *see also* R Doc. 50-5 at 2, ¶ 8.

Special School Programs.[7] Beginning July 1, 2021, all individuals working for LSD, LSVI, and the Special School Programs became employees of SSD rather than employees of the LDOE.[8]

At all relevant times herein, Ernest Garrett, III, Ph.D., was the Superintendent of SSD.[9] As the Superintendent of SSD, Garrett was also the Appointing Authority for SSD and was the only employee who had the authority to approve the hiring, firing, or promotion of any individual employed at SSD.[10] Garrett is a dark-skinned, African American male. He is also hearing impaired.[11]

Plaintiff is a dark-skinned, African American female. She is not hearing impaired.[12] Plaintiff was hired as a Regional Coordinator for SSD in November 2020.[13] Plaintiff served in the DOC Regional Coordinator role until April 26, 2021, when she was transferred to a Systems & Accountability Administrator position at SSD's central office.[14] In her DOC Regional Coordinator and Systems & Accountability Administrator position with SSD, Plaintiff reported to Shirley Lewis.[15] After receiving several complaints about Plaintiff's lack of professionalism, Dr. Garrett requested a meeting with Plaintiff at the SSD central office to address the issues.[16]

On July 1, 2021, Plaintiff became an employee of SSD as part of the legislative reorganization of the SSD. On that same date, and in connection with SSD's legislative reorganization, Plaintiff was promoted to Director of Accountability: Testing, Assessment, and Research for SSD.[17] The position of Director of Accountability, Assessments, Curriculum, and

---

[7] La. R.S. 17:1945.
[8] *See* 17:1945; *see also* R. Doc. 50-5 at 2, ¶ 9.
[9] R. Doc. 50-5 at 3.
[10] R. Doc. 50-5 at 3.
[11] *Id*.
[12] *Id*.
[13] *Id*.
[14] R. Doc. 50-5 at 4.
[15] *Id*.
[16] *Id*.
[17] R. Doc. 50-5 at 5.

Evaluations was first created on July 1, 2021. Plaintiff was the first individual to hold this Position.[18] In the role of Director of Accountability, Plaintiff's salary was $90,000.00.[19]

After moving Plaintiff into the role of Director of Accountability, Dr. Garrett became aware that there were concerns being raised by individuals within the accountability team, as well as concerns being voiced by the SSD leadership team, about Plaintiff's performance. It became clear to Dr. Garrett that Plaintiff did not possess the necessary leadership and collaborative skills to advance the goal of building a cohesive and collaborative work environment.[20] In working with Plaintiff more closely, Dr. Garrett also realized that she lacked experience working with the visually and hearing-impaired population, and this lack of experience prevented her from properly managing the objectives assigned to her in the SSD environment. Dr. Garrett found that Plaintiff's lack of understanding of the unique needs and nuances of the hearing and visually-impaired led to unnecessary conflict among her coworkers.[21] When Dr. Garrett addressed these concerns with Plaintiff, she was not receptive to his constructive feedback, which only further elevated his concerns about her ability to successfully perform in the role as the Director of Accountability.[22]

On or about October 29, 2021, Dr. Garrett directed SSD staff to notify Plaintiff that her employment was being terminated.[23] The decision to terminate Plaintiff's employment was based on her substandard performance in the role of Director of Accountability and her failure to meet Dr. Garrett's stated objectives for the SSD.[24]

---

[18] *Id*.
[19] *Id*.
[20] R. Doc. 50-5 at 6-7.
[21] R. Doc. 50-5 at 7.
[22] R. Doc. 50-5 at 7.
[23] R. Doc. 50-5 at 8.
[24] R. Doc. 50-5 at 8.

During her employment, Plaintiff did not make any complaints of race-based, gender-based, or color-based employment discrimination to Dr. Garrett.[25] Dr. Garrett had no knowledge of any race-based, gender-based, or color-based employment discrimination complaints made by Plaintiff to anyone else.[26] At all times during Plaintiff's employment with SSD, SSD followed the Equal Employment Opportunity policy adopted by SSD, which stated that "no person shall, on the basis of race, color, religion, sex, national origin, age, disability, genetic information, or veteran status, be discriminated against in any employment practice, as provided by federal and state law."[27]

## III.    LEGAL STANDARD

Summary judgment is appropriate if the moving party, "citing to particular parts of materials in the record," can show "there is no genuine dispute as to any material fact" and thus that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). However, when the non-movant bears the burden of proof at trial, the party seeking summary judgment must only show that an essential element of the non-movant's claim cannot be established. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."). The Court must construe all facts and inferences in the light most favorable to the non-movant and cannot weigh evidence or evaluate credibility. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008).

---

[25] R. Doc. 50-5 at 9.
[26] R. Doc. 50-5 at 10.
[27] R. Doc. 50-5 at 10.

Where, as here, Plaintiff will bear the burden of proof at trial, Defendant need not produce evidence negating or disproving every essential element of Plaintiff's case. *Celotex Corp.,* 477 U.S. at 323. Rather, Defendant simply must identify the absence of evidence supporting Plaintiff's case. The burden then shifts to Plaintiff to make an affirmative showing on ***all*** matters placed at issue by the motion. *Celotex Corp.,* 477 U.S. at 324-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). This burden is not a light one. Plaintiff must show more than the mere existence of a "scintilla of evidence" or "some metaphysical doubt as to the material facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Further, Plaintiff's mere speculation and conjecture cannot create disputes of material fact to avoid summary judgment. *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (quoting *Anderson*, 477 U.S. at 249-50). An application of the foregoing legal standard to the evidence of record mandates judgment as a matter of law in favor of Defendant.

## IV.    DISCUSSION

### I.    Plaintiff's claim of discrimination based on race, color, and sex fails as a matter of law.

A Title VII plaintiff carries "the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). In other words, "proof and finding of discriminatory motive is required." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Mitchell v. Darling Ingredients, Inc.*, No. 20-889, 2022 WL 458397, at *5 (M.D. La. Feb. 4, 2022). A plaintiff can prove discriminatory motive through either direct or circumstantial evidence. *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778

F.3d 473, 475 (5th Cir. 2015). This Court finds that, under either theory, Woods' discrimination claim fails.

### a. Plaintiff has no direct evidence of discrimination.

"In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Portis*, 34 F.3d at 329. "A statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action [is] direct evidence of discrimination." *Herster*, 887 F.3d at 185 (internal quotation omitted). Once a plaintiff presents direct evidence of discrimination, "the burden shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

In determining whether certain workplace comments constitute "direct evidence" of discrimination, courts look to four factors, including: "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne*, 778 F.3d at 476 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)). Comments that do not meet these [four] criteria are considered 'stray remarks,' and, standing alone, are insufficient to defeat summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (footnotes omitted); *see also Etienne*, 778 F.3d at 476. "'In applying this test, our ultimate focus is on whether the comments prove, "without inference or presumption, that race [or color or sex] was a basis in employment decisions' in the plaintiff's workplace." *Etienne*, 778 F.3d at 476 (quoting *Jones*, 427 F.3d at 993). The Fifth Circuit recently opined that, "[i]n direct evidence cases, comments must

meet a demanding standard because the plaintiff relies on them 'to prove the entire case of discrimination.'" *Simmons v. Greyhound Lines, Inc.*, No. CV 18-272-SDD-EWD, 2020 WL 61039, at *8 (M.D. La. Jan. 6, 2020)(quoting *McMichael v. Transocean Offshore Deepwater Drilling, Incorporated*, 934 F.3d 447, 457 (5th Cir. 2019)(quoting *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015))(emphasis added)). This Court finds that here, Plaintiff does not meet that standard.

### i. Purposed statements attributed to Dr. Garret are "stray remarks" and not direct evidence of discrimination.

As noted by Defendant, in an effort to prove her claims through direct evidence of discrimination, Plaintiff alleges in her Charge that Dr. Garrett said he "was not getting rid of any White folks," and on "multiple occasions, [Dr.] Garrett would make comments about [Woods'] natural hair needing to be tamed and [her] eyelashes being long," and that he "hoped [Woods] wasn't like the average angry black woman, to be more lady like and less masculine."[28] These comments do not constitute direct evidence of discrimination, and, instead, are mere "stray remarks" because they do not meet the "demanding standard" for direct evidence, and do not prove "without inference or presumption" that Dr. Garrett's decision to terminate Plaintiff's employment was, at least in part, based on her race, color, or sex. *See Etienne*, 778 F.3d at 476; *Simmons*, 2020 WL 61039, at *8.

Dr. Garrett's alleged comment that he was "not getting rid of any White folks," does not relate to Plaintiff's race, color, or sex. Accordingly, this comment does not satisfy the first of the four factors and is thus not direct evidence of discrimination. As to the remaining comments allegedly made by Dr. Garrett, such comments do not constitute direct evidence of discrimination; Plaintiff has failed to show that these comments were made proximate in time to her termination

---

[28] R. Doc 1-3 at 6.

or are in any way related to Dr. Garrett's *decision* to terminate Plaintiff's employment. Dr. Garrett stating that Plaintiff's Afro was intimidating, and asking Plaintiff why she wore long eyelashes does not "prove the existence of a fact" – that Dr. Garrett terminated Plaintiff because of her race, color, or sex – "without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). Accordingly, such statements are not direct evidence of discrimination.

Dr. Garrett's comment that he "hoped [Woods] wasn't like the average angry black woman, to be more lady like and less masculine,"[29] likewise does not constitute direct evidence of discrimination, as it has no connection to the challenged employment decision, *i.e.,* Plaintiff's termination. Rather, Plaintiff testified that this comment was made in response to her complaint to Dr. Garrett that she believed Dr. Heather Laine, former Principal of the Louisiana School for the Deaf, was discriminating against the hearing.[30] In cases with far more egregious allegations than those stated here, the Fifth Circuit has declined to find direct evidence of discrimination. *See Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 255 (5th Cir. 2020)(declining to find direct evidence of racial discrimination based on comments by a supervisor asking African-American employees if they "ate watermelon and fried chicken on holidays" and once referred to the plaintiffs as "the black girls" and also threatened that management wanted "to replace you-all with Hispanics"); *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010)(supervisor's comment that plaintiff was an "old, gray-haired fart" was not direct evidence of age discrimination where the comment was not proximate in time or related to the employment decision); *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 329-30 (5th Cir. 1998) (supervisor's isolated references to an employee as a "Porch Monkey" and "Buckwheat" held to be stray remarks from which race discrimination could not be inferred). *See also Jones v. Cont'l Cuisine, Inc.,* 353 F. Supp. 2d 716,

---

[29] R. Doc. 1-3 at 6.
[30] R. Doc. 50-2 at 45.

721 (E.D. La. 2004)(finding that even if a supervisor used the term "n word," the comment was a stray remark because it was not directed specifically at the plaintiff but was a general comment which was made three weeks before the plaintiff was fired and unrelated to the termination decision). In conclusion, this Court find the comments attributed to Dr. Garrett are "stray remarks" and do not constitute direct evidence of discrimination as a matter of law.

> **ii. The record shows that Defendant would have made the same decision to terminate Plaintiff's employment regardless of any alleged improper motive.**

Once a plaintiff presents direct evidence of discrimination, "the burden shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Plaintiff's employment was terminated because SSD, through Dr. Garrett, was concerned about Plaintiff's performance, did not see any improvement after these concerns were presented to Plaintiff, and because Dr. Garrett was continuing to monitor and assess which positions were necessary for the success of SSD during this transitional period following the July 1, 2021 legislative reorganization.[31] Importantly, after Plaintiff's termination, Dr. Garrett did not backfill her position. Indeed, the Director of Accountability position was not backfilled until July 25, 2022, when Interim Superintendent Katherine Granier selected Annette Chelette to fill the role.[32] Therefore, the record evidence establishes that Defendant would have made the same decision to terminate Plaintiff's employment regardless of any improper motive by Dr. Garrett. Based on the foregoing, Plaintiff cannot prove her claim of discrimination by direct evidence.

---

[31] R. Doc. 50-5, ¶¶ 22, 24-25, 36-44.
[32] R. Doc. 50-5, ¶¶ 52-54.

**b. Plaintiff has not established a *prima facie* case of race, color, or sex discrimination.**

If a Title VII plaintiff produces no direct evidence of intentional discrimination, then the plaintiff must build a case based on circumstantial evidence under the *McDonnell Douglas* framework. *Portis*, 34 F.3d at 328; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* framework, the initial burden rests with the plaintiff to establish that a *prima facie* case of discrimination exists by showing that she "(1) belongs to a protected group, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) either (i) was replaced by someone outside of the protected group, or (ii) was treated less favorably than a similarly situated employee (disparate treatment)." *Walker v. Smith*, 801 F. App'x 265, 269 (5th Cir. 2020). Here, Plaintiff has not established a *prima facie* case of discrimination because she has not shown that she was replaced by someone outside of her protected class or treated less favorably than others similarly situated.

**i. Plaintiff was not replaced after the termination of her employment.**

The undisputed evidence shows that Plaintiff's position was not backfilled for nearly one year following her termination, and that, once filled, by Annette Chelette, Dr. Garrett was not the decision-maker. Specifically, Plaintiff was terminated on October 29, 2021, and the Director of Accountability position was not filled by Ms. Chelette until July 25, 2022 - almost nine months later.[33] Further, Ms. Chelette shares a protected class – sex, female – with Plaintiff.[34] Moreover, Dr. Garrett was not the decision-maker in connection with Ms. Chelette's appointment to Director of Accountability, and prior to Ms. Chelette's appointment, Dr. Garrett had chosen *not* to backfill this position.[35]

---

[33] R. Doc. 50-5, ¶¶52-54.
[34] R. Doc. 50-5, ¶ 53.
[35] R. Doc. 50-5, ¶¶ 49-50.

### ii. Plaintiff was not treated less favorably than others outside of her protected class.

"The 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of h[er] protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow Chem. Co*., 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kan. City S. Ry*., 574 F.3d 253, 259 (5th Cir. 2009)). "This coworker, known as a comparator, must hold the 'same job' or hold the same job responsibilities as the Title VII claimant; must 'share the same supervisor or' have h[er] 'employment status determined by the same person' as the Title VII claimant; and must have a history of 'violations' or 'infringements' similar to that of the Title VII claimant." *Id*.

Plaintiff has not put forward any evidence, much less alleged, that any person was treated more favorably than her under nearly identical circumstances. Plaintiff has not identified any other comparable employee at SSD, reporting to Dr. Smith, who failed to improve performance based on concerns presented to them by Dr. Garrett, and whose position was deemed unnecessary for the SSD's success under Dr. Garrett's leadership and Appointing Authority. Absent this comparator evidence, Plaintiff's *prima facie* case fails. *See Melvin v. Barr Roofing Co.*, 806 F. App'x 301 (5th Cir. 2020) (granting summary judgment on discriminatory termination claim where plaintiff could not identify a similarly situated comparator who was treated more favorably under nearly identical conditions); *Dean v. Prop. One Inc.*, 51 F. App'x 929 (5th Cir. 2002) (affirming summary judgment on claim of gender discrimination where Plaintiff conceded that she was not replaced by a man and offered no evidence that a man was treated more favorably in similar circumstances); *Francis v. Glaxismithkline, Inc.*, No. CIV.A. 02-1592, 2003 WL 22715634, at *6 (E.D. La. Nov. 14, 2003) (granting summary judgment in favor of employer on race discrimination claim where

plaintiff was not replaced and failed to put forward any evidence that she was treated less favorably than similarly situated Caucasian employees).

### c. Plaintiff's termination was based on legitimate, non-discriminatory reasons and Plaintiff has shown no evidence of pretext.

If a plaintiff can make a *prima facie* case of discrimination, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Stallworth v. Singing River Health Sys.*, 469 F. App'x 369, 371 (5th Cir. 2012). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the employer meets its burden of production, the plaintiff must then create a genuine issue of material fact that either: "(1) the defendant's reason is not true, but instead is a pretext for discrimination (pretext alternative); or (2) regardless of the nondiscriminatory reasons, the plaintiff's [race, color, or sex] was also a motivating factor (mixed motives alternative)." *Santos v. Baton Rouge Water Works Co.*, No. CV 18-1098-JWD-RLB, 2021 WL 1227875, at *15 (M.D. La. Mar. 31, 2021)(citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citation omitted); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Defendant has articulated legitimate, nondiscriminatory reasons for Plaintiff's termination. Dr. Garrett was concerned about Plaintiff's substandard performance, her failure to meet his stated objectives for the SSD, her failure to improve, and her inability to accept feedback after such concerns were brought to her attention. Furthermore, the Director of Accountability position was not deemed necessary for the SSD's success under Dr. Garrett's Appointing Authority.[36]

Once the defendant articulates a legitimate, nondiscriminatory reason for the employment action at issue, "the burden shifts back to the plaintiff to establish either: (1) that the employer's

---

[36] R. Doc. 50-5, ¶¶ 22, 24, 25, 36-44.

proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611. "[The Fifth Circuit] has held that a plaintiff's summary judgment proof must consist of more than 'a mere refutation of the employer's legitimate nondiscriminatory reason.' " *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815 (5th Cir. 1993)). "Because the plaintiff bears the ultimate burden of proving that intentional discrimination was a motivating factor by a preponderance of the evidence, she 'must produce substantial evidence that the defendant's nondiscriminatory reason is merely a pretext for impermissible discrimination.'" *Pippins v. Tangipahoa Par. Council*, 2004 WL 1575410, at *7 (E.D. La. July 13, 2004) (quoting *Read v. BT Alex Brown Inc.*, 72 F. App'x 112, 115 (5th Cir. 2003)) (emphasis in original). "'Evidence is substantial if it is of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions.'" *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 339 (5th Cir. 2010) (quoting Laxton v. Gap Inc., 333 F.3d 572, 579 (5th Cir. 2003)). "'Where the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate.'" *Pippins*, 2004 WL 1575410, at *7 (quoting *Read*, 72 F. App'x at 115). The Court finds that Plaintiff has not met her burden here.

### i. Plaintiff's performance was unsatisfactory, and her position was deemed unnecessary.

Dr. Garrett had growing concerns about Plaintiff's performance, and her failure to take ownership of the accountability functions of her job, which was a vital part of the position. Further, when Dr. Garrett addressed these concerns with Plaintiff, she was not receptive to feedback, which further elevated his concerns about her ability to successfully perform in her role as the Director

of Accountability. *See Earle v. Aramark Corp.*, 247 F. App'x 519 (5th Cir. 2007) (holding that defendant's reason for terminating plaintiff – her poor job performance – was legitimate nondiscriminatory reason, shifting burden back to plaintiff); *Assariathu v. Lone Star Health Management Associates, LP*, 516 F. App'x 315 (5th Cir. 2013) (holding that poor job performance was legitimate, nondiscriminatory reason for terminating employee of Indian national origin on Title VII discrimination claim); *Matthews v. United Broth. Of Carpenters and Joiners of America*, 228 F. App'x 436 (5th Cir. 2007) (ineffective work performance constituted legitimate, non-race-based reason for discharge, and ineffective work performance was not pretext for race discrimination).

### ii.  Plaintiff has shown no evidence of discriminatory motive or pretext.

A plaintiff may demonstrate pretext by showing that a discriminatory motive more likely motivated the employer's decision, such as through evidence of disparate treatment, or by establishing that the employer's propounded legitimate business reason is unworthy of credence. *Ragona v. Louisiana Workforce Comm'n*, No. 1:19-CV-00960, 2021 WL 4434187, at *4 (W.D. La. Sept. 27, 2021), aff'd, No. 21-30652, 2022 WL 3133406 (5th Cir. Aug. 5, 2022).  There is no evidence in the record that a discriminatory motive was at play in making the decision to terminate Plaintiff's employment. Plaintiff has come forth with no evidence attributing any discriminatory animus to Dr. Garrett in connection with his decision to terminate her employment. Plaintiff has no evidence whatsoever to support an inference that a discriminatory motive more likely motivated Dr. Garrett's decision, or that Dr. Garrett and SSD's explanation is unworthy of credence.

"The 'same actor' inference creates a rebuttable presumption that an adverse action imposed on a plaintiff was not the result of unlawful discrimination when the same person both hires and fires, or imposes some other adverse action on, the plaintiff." *Williams v. Louisiana*, No.

14-00154-BAJ-RLB, 2015 WL 5318945, at *8 (M.D. La. Sept. 11, 2015) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (abrogated in part on other grounds, *Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000)); *Trevino v. City of Fort Worth*, No. 4:12-CV-717-A, 2013 WL 451 6643, at *7 (N.D. Tex. Aug. 23, 2013)). Plaintiff's total lack of evidence cannot overcome the presumption established by the "same actor" inference. Put simply, there is no evidence or reason to infer that Dr. Garrett's decision to terminate Plaintiff's employment was based on illegal discrimination. Because Plaintiff has no evidence of pretext, let alone evidence to cast any doubt on Defendant's stated reasons for her termination, Plaintiff's discrimination claims fail as a matter of law and Defendant is entitled to judgment in its favor. *See Cervantez v. KPMG Servs. Co.*, 349 F. App'x 4, 10 (5th Cir. 2009) (per curiam) ("[A] fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith.").

## II.    Plaintiff's claim of disparate pay fails as a matter of law as Plaintiff has not established a *prima facie* case of pay disparity.

To establish a *prima facie* case of pay discrimination under Title VII, "a plaintiff must show (1) that [s]he was a member of a protected class; (2) that [s]he was paid less than a non-member; and (3) that h[er] circumstances are nearly identical to those of the better-paid non-member." *Blanchard v. Tulane University*, 636 F.Supp.3d 642, 657 (E.D. La. Oct. 21, 2022) (internal quotations omitted) (citing *Mengistu v. Mississippi Valley State University*, 716 F. App'x 331, 333-34 (5th Cir. 2018)). If plaintiff establishes a *prima facie* case, the burden shifts to defendant to proffer non-discriminatory reasons for such pay disparity. *Mengistu*, 716 F. App'x at 334 (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522-23 (5th Cir. 2008)). As with the *McDonnell Douglas* burden-shifting approach, this is a burden of production, not persuasion, and "involves no credibility assessment." *Id.* (quoting *Squyres v. Heico Cos., LLC*, 782 F.3d 224, 231

(5th Cir. 2015)). If the employer does so, plaintiff must overcome the employer's rationale by putting forward substantial evidence that such rationale is merely pretext. *Id.* (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

Plaintiff's EEOC Charge makes only vague allegations of disparate pay. She makes no effort to specifically identify the comparators outside of her protected class who were paid more money.[37] Plaintiff's discovery responses indicate that "all directors were White," and that none of these directors met the credentialing guidelines set forth by the Louisiana Department of Education. However, these conclusory assertions are insufficient as Plaintiff has not identified any similarly situated comparators, nor offered any evidence of comparators, which would support such a claim. (*See Herster v. Board of Supervisors of Louisiana State University*, 887 F.3d 177, 184 (5th Cir. 2018) (holding that plaintiff's Title VII disparate pay claim must fail where she failed to identify that she was paid less than a proffered comparator, not in her protected class, for work requiring substantially the same responsibility)).

While Plaintiff maintains that she was paid less than other directors and that "all directors were White," she fails to identify the other directors' job duties, qualifications, experience, and/or their supervisors. Accordingly, there is no evidence that the other directors about which Plaintiff complains are proper comparators to Plaintiff. *Shahrashoob v. Texas A&M University,* 125 F.4th 641, 651 (5th Cir. 2025) ("A plaintiff shows nearly identical circumstances when the two employees held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.") (quoting *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019))). In the

---

[37] The allegations of disparate pay are included in her Charge of Discrimination which was attached as an exhibit to her Complaint. (*See* R. Doc. 1).

absence of any evidence that Plaintiff was paid less than a similarly situated comparator outside of her protected class, Plaintiff's claim for disparate pay should be dismissed as a matter of law.

### III.     Plaintiff's Title VII retaliation claim fails as a matter of law.

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (overruled in part on other grounds by *Hamilton v. City of Dallas*, 79 F.4th 494 (5th Cir. 2023)).[38] "Protected activities consist of (1) opposing any practice deemed an unlawful employment practice by [T]itle VII (the 'opposition clause') or (2) making a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under [T]itle VII (the 'participation clause')." *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011). The Fifth Circuit has interpreted the "opposition clause to mean that a plaintiff engages in protected activity when she complains of an employment practice that she 'reasonably believes' violated Title VII." *Badgerow v. REJ Prop., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020) (quoting *EEOC v. Rite Way Serve, Inc.*, 819 F.3d 235, 240 (5th Cir. 2016)). Moreover, the Fifth Circuit has "consistently held that a vague complaint, *without any reference to an unlawful employment practice under Title VII does not constitute protected activity*." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (emphasis added). Accordingly, "[c]omplaining about unfair treatment without specifying

---

[38] Plaintiff's retaliation claim under Title VII is similarly subject to the *McDonnell Douglas* burden-shifting framework. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 834 (5th Cir. 2022). That is, if a plaintiff can make this *prima facie* showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Stallworth v. Singing River Health Sys.*, 469 F. App'x 369, 371 (5th Cir. 2012). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557. "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory" purpose. *Id.* "To carry this burden, the plaintiff's must rebut each nondiscriminatory [] reason articulated by the employer." *Id.*

why the treatment is unfair…*is not protected activity.*" *Tratee v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) (emphasis added). "In a claim of protected opposition, an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices." *Allen v. Envirogreen Landscape Prof., Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017).

In her deposition testimony, Plaintiff claims she was retaliated against "[w]hen she was looking for accountability for the funds and the allocation of the monies I really saw, and also when I was bringing to light all the discrepancies and violations that were happening to the children, I started being left out of pertinent emails that I needed to get.[39] Plaintiff's own testimony establishes that she did not oppose an employment practice she believed was unlawful under Title VII. Accordingly, Plaintiff's retaliation claim fails as a matter of law.

**IV.    Plaintiff's hostile work environment claim fails as a matter of law.**

Pursuant to Fifth Circuit precedent, plaintiff must establish the following five elements to make a *prima facie* showing of a Title VII hostile work environment claim:

> (1) The employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or other protected class]; (4) the harassment complained of affected a term condition or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Haley v. Hospital Service District of West Feliciana Parish*, 321 F.Supp.3d 670, 685-86 (M.D. La. May 30, 2018) (quoting *Brew v. Weyerhaeuser NR Co.*, 537 F. App'x 309, 313 (5th Cir. 2013)). In *Ramsey v. Henderson*, the Fifth Circuit explained that: "For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the

---

[39] R. Doc. 50-2 at 52.

conditions of the victim's employment and create an abusive working environment." 286 F.3d 264, 268 (5th Cir. 2002) (internal quotations and citations omitted). "The plaintiff must show subjective awareness of the hostility or abusiveness and that his awareness is objectively reasonable." *Clark v. City of Alexandria*, 116 F.4th 472, 479 (5th Cir. 2024) (citing *Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 433 (5th Cir. 2022)). Courts consider a totality of the circumstances to determine whether an environment is objectively hostile. "Relevant considerations include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367 (1993)).

Plaintiff claims she was subject to a hostile work environment based on: Dr. Garrett's purported comments about "not getting rid of any White folks," her natural hair, long eyelashes, and hoping she was not like the "average angry black woman;" allegedly being paid less than her underqualified White predecessor; and, her perception that she was being paid less than the other directors who were all White and underqualified.[40] Plaintiff's allegations do not rise to the level of a hostile work environment as a matter of law. The incidents identified by Plaintiff occurred only sporadically throughout her employment and did not involve any form of physical threats or otherwise humiliating behavior. At best, they were no more than offensive utterances. When testifying about her perceived issues with Dr. Laine, Plaintiff stated, "but I just, you know, learned how to deal with it," and that even when considering her issues with Dr. Laine, she "was really very happy with my current position because there was so much to learn and do in terms of education, it was really going to give me everything I needed;" and, finally, that she had always

---

[40] R. Doc. 1-3, 6-7.

had "success and because [she] was still looking to grow in [her] profession as an educator," so she would not "be deterred by anybody's behavior."[41] Woods further testified that she "thought it would be like a better skill set to, you know, learn how to deal with all types of personalities."[42] There is simply no evidence of a hostile work environment, and, accordingly, Plaintiff's claim fails.

## V.   CONCLUSION AND RECOMMENDATION

Based on discussion above, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment (R. Doc. 50) be **GRANTED** and Plaintiff's claims against Defendant be **DISMISSED.**

Signed in Baton Rouge, Louisiana, on November 26, 2025.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] R. Doc. 50-2 at 26, 34.
[42] R. Doc. 50-5 at 34.